Jarel D. MINER and Michael
D. Mansfield, Plaintiffs,

v.

RUBIN & FIORELLA, LLC, a New
York limited liability company and
Does 1–10, inclusive, Defendants.

No. 2:02–CV–01067 PGC.

United States District Court,
D. Utah,
Central Division.

Jan. 24, 2003.

Michael Dee Mansfield, Sandy, UT, for Plaintiffs.

Tim Dalton Dunn, Paul J. Simonson, Dunn & Dunn, Salt Lake City, UT, for Defendant.

## ORDER GRANTING MOTION TO DISMISS COMPLAINT WITHOUT PREJUDICE

CASSELL, District Judge.

This matter is before the court on defendant Rubin, Fiorella & Friedman, LLP's ("Rubin") motion to dismiss plaintiffs Jarel D. Miner and Michael D. Mansfield's complaint. Rubin contends that it lacks the minimum contacts necessary with the state of Utah to allow this court to assert personal jurisdiction over it. Miner and Mansfield contend in opposition that Rubin made the contacts necessary with ·Utah when Rubin undertook to provide legal services for a Utah company and further when it served Miner in Utah with process for a New York state law suit. For the following reasons, the court GRANTS without prejudice Rubin's motion to dismiss Miner and Mansfield's complaint.

### Background

The relevant facts are undisputed. Plaintiff Minor and Mansfield were employees of the Mansfield Corporation, a corporation domiciled in Utah, when the Mansfield Corporation contracted for the performance of legal services from Rubin. Rubin is a New York law firm. The attorney client relationship was formed on or about August 7, 2000. The only Utah client that Rubin has is the Mansfield Corporation. Rubin does not solicit any clients in Utah and does not hold itself out to the Utah public by way of advertising, telephone listings, fax listings, catalogs or any other activity geared toward Utah citizens. Rubin did, however, perform legal services for the Mansfield Corporation that involved preparation of an offering memorandum so that securities could be offered through registered broker-dealers. In connection with that business, an employee of Rubin apparently traveled to Utah several times.

Although Mansfield Corporation made some payments for services, it eventually fell behind in its payments. Lawyers at Rubin made many telephone calls from New York to Utah seeking full payment. Subsequently, on or about June 6, 2001, Rubin sued Mansfield Corporation, as well as Miner and Mansfield individually, in the New York State Supreme Court for these services. In connection with that New York lawsuit, on about June 17, 2001, service of a summons was made on both Miner and Mansfield individually in the City of Sandy in Utah. On or about March 21, 2000 the Supreme Court of the State of New York entered judgment, ordering Mansfield Corporation to pay the fees and dismissing all counts against Miner and Mansfield as individuals.

In the current action, Miner and Mansfield filed suit against Rubin in Utah in Third District Court for malicious prosecu-

tion, intentional infliction of emotional distress, and abuse of process. The gravamen of the complaint was the allegation that Rubin acted without probable cause when it brought the New York State action against Miner and Mansfield individually. Rubin removed the complaint from state court to this court on grounds of diversity and then timely filed the pending motion to dismiss. Because the facts of the matter are clear cut, the court declined to hold a hearing on the issue.

### Discussion

To survive a 12(b)(1) motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing that such jurisdiction exists when all allegations in the complaint are viewed in the light most favorable to the plaintiff.[1] Rubin is correct when it argues that Miner and Mansfield cannot make such a showing.

As the Tenth Circuit has instructed, "To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[2] Here, Utah law governs the issue.[3]

Although Miner and Mansfield's pleadings are not entirely clear on this point, it appears that they do not allege *general* personal jurisdiction over Rubin. Such a claim would, in any event, be impossible, because Rubin has plainly not been "conducting substantial and continuous local activity in the forum state."[4]

The issue, then, boils down to whether *specific* jurisdiction over Rubin is proper in this case. As the Tenth Circuit has instructed, a three-part inquiry is used under the Utah long-arm statute to determine whether specific jurisdiction exists: (1) whether the defendant's acts or contacts are described within the parameters of the Utah long-arm statute; (2) whether a "nexus" exists between the plaintiff's claims and the defendant's acts or contacts; and (3) whether the attainment of personal jurisdiction over the defendant pursuant to the Utah long-arm statute satisfies the requirements of due process.[5] Frequently it makes sense to assess the due process issue first, "because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[6] A court may "exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state."[7] The "minimum contacts" necessary for personal jurisdiction are established "if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities."[8]

**1.** *See, e.g., Behagen v. Amateur Basketball Ass'n of the U.S.A.,* 744 F.2d 731 (10th Cir. 1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

**2.** *Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir.1999).

**3.** *See Id.*

**4.** *Id. (quoting Arguello v. Industrial Woodworking Mach. Co.,* 838 P.2d 1120, 1122 (Utah 1992)).

**5.** *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir.1995).

**6.** *SII MegaDiamond Inc. v. American Superabrasives Corp.,* 969 P.2d 430, 433 (Utah 1998).

**7.** *World Wide–Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)(quoting *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**8.** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Here, to establish contacts with Utah, Miner and Mansfield make two allegations. First, that the defendant "committed a tortious act against Plaintiffs by serving process (i.e., service of a summons and complaint) upon two Utah residents within the State of Utah." [9] Second, the defendant transacted business in the state by doing legal work for a Utah company, accepting payments from that company, and sending an employee to Utah. The court will consider these allegations in turn.

### Service of Process

With respect to alleged tortious act of serving process in Utah, in *Far West Capital, Inc. v. Towne*, [10] the Tenth Circuit held that the mere allegation that an out-of-state defendant tortiously interferes with contractual rights or commits other business torts that allegedly injure a forum resident "does not necessarily establish that the defendant possesses the constitutionally required minimum contacts" [11] such that the court has personal jurisdiction over that defendant. The allegation would only satisfy part one of the above three-part inquiry. The Circuit further held, "Instead, in order to resolve the jurisdictional puzzle, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the forum's laws." [12]

In *Far West*, the Tenth Circuit cited *Wallace v. Herron*, [13] a Seventh Circuit case, to support its holding that the allegation of a business tort committed on a forum resident, in and of itself, would not be enough to determine that a forum court had *in personam* jurisdiction over an out of state defendant. In *Wallace*, the Seventh Circuit had held that the mere allegation of an intentional tort does not create jurisdiction in the plaintiff's home forum under *Calder v. Jones*. [14]

The facts of *Wallace* are actually quite close to the matter at hand. In *Wallace*, an Indiana resident (Wallace) sued three California attorneys in Indiana alleging malicious prosecution. The malicious prosecution claim was based upon a prior lawsuit where the California attorneys had sued Wallace. In the prior lawsuit, the defendants had served interrogatories, requested the production of documents and caused Wallace to respond to five complaints in Indiana, where he resided.

Like the Utah long-arm statute at issue here, the Indiana long-arm statute extended the personal jurisdiction of courts sitting in Indiana to the limits permitted under the due process clause of the Fourteenth Amendment. [15] Even so, the Seventh Circuit reasoned in *Wallace* that "it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts." [16] The Seventh Circuit did not believe that the Supreme Court in *Calder v. Jones* [17] meant to say that any plaintiff may hale any defendant into court in the plaintiff's home state merely by asserting

---

9. Opp. to Motion to Dismiss Plaintiff's Complaint at 4.

10. *Far West Capital, Inc.*, 46 F.3d 1071 (1995).

11. *Id.* at 1079.

12. *Id.*

13. 778 F.2d 391 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986), *cited in Far West*, 46 F.3d at 1079.

14. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

15. Ind.Code Ann., Title 34, Trial *Rule 4.4* (West 1985).

16. *Wallace*, 778 F.2d at 394.

17. 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

that the defendant has committed an intentional tort against the plaintiff.[18] Rather, the Seventh Circuit reasoned, in *Calder* the suit grew out of an article about the California activities of a California resident whose career was centered in California. California was the focal point both of the story and the harm suffered. The injury in *Calder* occurred in California because of the publication of the story to other California residents. This situation was sharply different from the one in *Wallace*, where the defendants' only arguable contacts with Indiana were the legal papers which were served on Wallace in Indiana. According to the Seventh Circuit, the California lawyers took no actions that would create the necessary connection with Indiana for them to reasonably anticipate being haled into court there.

In addition, the Fifth Circuit has held that an allegation of malicious prosecution, along with an allegation of abuse of process, would not create specific jurisdiction over a defendant whose sole tie to the jurisdiction is the service of process on the plaintiff in an earlier lawsuit. In *Allred v. Moore & Peterson*,[19] the Fifth Circuit found that under the tort prong of the Mississippi long-arm statute consequences stemming from actual tort injury would not confer personal jurisdiction at the site where the consequences occurred. The Fifth Circuit concluded that where malicious prosecution and abuse of process were alleged, stemming from a lawsuit that happened outside the state, only the consequence of those injuries would occur in Mississippi in the form of service of process. Hence, the Fifth Circuit found that alleged torts of malicious prosecution and abuse of process that resulted in pro-

cess being served on a Mississippi law office were insufficient contacts with the state of Mississippi to create personal jurisdiction over an alleged tortfeasor.[20] Moreover, the Fifth Circuit reasoned that even if there were not only damages, but also injury from these particular torts felt in Mississippi, the strictures of due process would prevent a Mississippi court from exercising personal jurisdiction over an alleged injurer.[21]

■ The Tenth Circuit has not had occasion to address directly the issue of personal jurisdiction in the context of a complaint alleging malicious prosecution. But the Tenth Circuit's analysis in *Far West* seems parallel to the decisions of the Fifth and Seventh Circuits. The court will apply these Circuits' analysis here. Miner and Mansfield allege that personal jurisdiction exists over Rubin because they were served with process abusively and as a result of malicious prosecution. Such service, in and of itself, is an inadequate contact with the state of Utah to create specific jurisdiction in Utah over Rubin.

### Business in Utah

There remains to be considered Miner and Mansfield's second argument—that the legal services rendered by Rubin created sufficient contacts with Utah to permit specific personal jurisdiction. In making this determination, the court must consider the "quantity and quality" of Rubin's contacts with Utah.[22] Miner and Mansfield allege the following contacts: (1) Rubin undertook to perform services for a Utah corporation; (2) Rubin received payment from a Utah corporation, Mansfield Corporation; (3) Rubin made

---

18. *Id.*

19. 117 F.3d 278 (5th Cir.1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 691, 139 L.Ed.2d 637 (1998).

20. *Id.* at 283–285.

21. *Id.* at 285–286.

22. *Soma*, 196 F.3d at 1298.

"many" telephone calls to Mansfield Corporation in Utah to attempt to collect payment for services rendered; (4) legal work was sent from Rubin to Mansfield Corporation in Utah and (5) an employee of Rubin traveled to Utah "several times" to draft documents and meet with people connected with Mansfield Corporation.

The first possible difficulty with relying on these five business factors is that they lack a direct nexus to the claims at hand. Miner and Mansfield's complaint raises three causes of action: malicious prosecution, intentional infliction of emotional distress, and abuse of process. All of these causes of action pertain solely to the service of process in Utah, not to the prior course of any possible business dealings between the parties.

Along these lines, Rubin argues that the business factors are irrelevant under Utah's long-arm statute because they lack a sufficient nexus to the causes of action in the complaint. Citing this court's 1995 decision in *Harnischfeger Engineers, Inc. v. Uniflo Conveyor, Inc.*,[23] Rubin maintains that only where the plaintiff's claims "arise from" the defendant's in-state conduct is jurisdiction proper. Rubin's argument fails to recognize that Utah has amended its long-arm statute since the *Harnischfeger* decision. When this court decided *Harnischfeger*, the long-arm statute authorized jurisdiction over nonresidents only over any claim "arising out of" specified in-state activities.[24] As this court explained (in a thorough opinion from Judge Winder), the phrase "arising out of" is "quite narrow and therefore mandates that the court ab-

stain from taking jurisdiction in those cases where the plaintiff's claims and the defendant's contacts are only tenuously 'related.' "[25] This court also specifically observed, however, that the Utah legislature had expressed an intent to extend jurisdiction to the "fullest extent permitted by the due process clause."[26] If that were really the legislature's intent, this court noted, "it should amend the Utah long-arm statute to incorporate ... 'arising out of or relating to' language" from Supreme Court opinions.[27] Apparently following this court's suggestion, in 1998 the Utah legislature amended the long-arm statute, substituting the broader phrase "arising out of or related to" in place of the narrower phrase "arising from."[28] Therefore, the *Harnischfeger* decision is no longer good law on the nexus issue, because the statute has been amended.

The nexus question in this case thus devolves to whether Rubin's in-state contacts "relate to" the causes of action in the complaint. As explained by this court in *Harnischfeger*, the phrase "relate to" is potentially "very broad."[29] It is arguable here that Rubin's business dealings in fact relate to the subsequent alleged malicious prosecution.

■ This court, however, need not firmly resolve this question. Even assuming that the business dealings relate to the causes of action, the contacts are not sufficient to confer jurisdiction. The fact that Rubin performed work for a Utah corporation and received payments from that corporation is a mere fortuity. The fact that

---

**23.** 883 F.Supp. 608, 613–14 (D.Utah 1995).

**24.** *See Id.*, at 616 (discussing Utah Code Ann. § 78–27–24 (Supp.1994)).

**25.** *Id.* at 617.

**26.** *Id.* at 618 n. 14 (citing Utah Code Ann. § 78–27–22 (1992)).

**27.** *Id.*

**28.** *See* Utah Code Ann. § 78–27–24 historical notes.

**29.** *Harnischfeger*, 883 F.Supp. at 616.

Mansfield Corporation "happened to be a resident of Utah was of no consequence to [Rubin]." [30] Similarly, the telephone calls and mailing of legal documents are not enough. "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." [31]

 Finally, Miner points to the fact that Rubin sent an employee to Utah to work on the legal issues at hand. While this precise fact pattern does not appear to have been addressed by the Tenth Circuit, it has concluded that the presence of an agent within the state is insufficient to establish minimum contacts. In *Far West,* the Circuit refused to endorse the idea that "retaining legal counsel ... simply to consult regarding a part of a transaction would necessarily establish minimum contacts with the consultant's home forum." [32] The situation here is something of the inverse of that situation, but the principle would apparently remain the same—merely consulting with a client in the state of Utah is insufficient to establish minimum contacts.

The opinions of at least two other circuits support this conclusion. In *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*[33] the Second Circuit recently considered whether a Puerto Rican law firm could be sued in New York for legal malpractice case. In that case, the law firm maintained an apartment in New York, in large part to service its New York clients. Also, the firm faxed newsletters regarding Puerto Rican legal developments to numerous persons in New York and performed work for numerous New York clients and New York law firms. In its marketing materials, the firm touted its "close relationship with the Federal Reserve Bank of New York." [34] The Second Circuit concluded that these were sufficient contacts to establish jurisdiction:

> [W]hile these contacts may not have directly given rise to the plaintiff's cause of action, they certainly "relate to" it. Law firms obtain new business largely through reputation and word of mouth, and thus the activities of a firm which maintains its presence and reputation in a particular legal market certainly can be said to a proximate cause of the engagements it obtains in that market....
>
> These contacts are not the kind of "random, fortuitous, or attenuated contacts" or "unilateral activity of another party or a third person" that the purposeful availment requirement is designed to eliminate as a basis for jurisdiction. The engagement which gave rise to the dispute here is not simply one of a string of fortunate coincidences for the firm. Rather, the picture which emerges from the above facts is that of a law firm which seeks to be known in the New York legal market, makes efforts to promote and maintain a client base there, and profits substantially therefrom.[35]

The Second Circuit's decision should be compared with the Ninth Circuit's earlier decision in *Sher v. Johnson.*[36] In *Sher,* a California client brought a malpractice action against a Florida law firm in connection with representation in a Florida criminal matter. The Ninth Circuit held that "[o]ut-of-state legal representation does

---

30. *Id.* at 1299.

31. *Far West Capital, Inc.,* 46 F.3d at 1077.

32. 46 F.3d at 1076.

33. 305 F.3d 120 (2nd Cir.2002).

34. *Id.* at 128.

35. 305 F.3d at 128–29 (citations omitted).

36. 911 F.2d 1357 (9th Cir.1990).

not establish purposeful availment of the privilege of conducting activities in the forum state, where the law firm is solicited in its home state and takes no affirmative action to promote business within the forum state." The Ninth Circuit also rejected the argument—identical to the position Miner advances here—that traveling to California by the Florida lawyers established minimum contacts:

> The trips to California were incident to the Florida representation. It may be said, of course, that by coming to California in connection with the representation, the partnership conducted its business in that state. We do not believe, however, that in the context of the parties' actual course of dealing, the [law firm] was availing itself of any significant California privilege by coming into the state to talk to its client. The three trips to California were discrete events arising out of a case centered entirely in Florida; they appear to have been little more than a convenience to the client, who would otherwise have had to travel to Florida.[37]

Ultimately the Ninth Circuit did find jurisdiction was proper in California, but only because the firm had taken a deed of trust on the clients' home in California. Taking such a property interest, which would potentially involve the firm with the California recorder's office and the California courts, was a significant contact with the state.[38]

Following the analysis of the Second and Ninth Circuits, it is clear that Rubin's limited contacts with Utah are insufficient to confer jurisdiction. Unlike *Bank Brussels*, there has been no attempt by Rubin to establish a "presence" in Utah. It is undisputed that Rubin does not solicit any clients in Utah and does not hold itself out to the Utah public by way of advertising, telephone listings, fax listings, catalogs, or any other activity geared toward Utah citizens.[39] Mansfield Corporation was Rubin's only Utah client. It also bears emphasizing that the attorney-client relationship in this case was formed in New York and concerned insurance regulatory matters dealing with federal law, not Utah law.[40] Similarly, as in *Sher*, the several trips by a law firm employee to Utah appear to be simply a convenience to a client, not an attempt to transact continuous business in this state. For all these reasons, the five business factors cited by Miner are insufficient to establish jurisdiction in Utah.

 Having concluded that the service of process, standing alone, is insufficient for jurisdiction, and having further concluded that the business related factors, standing alone, are insufficient for jurisdiction, the court must then consider the combination of contacts is sufficient for jurisdiction. But even considering all of the contacts together, the court cannot find sufficient minimum contacts to satisfy due process requirements. The contacts with Utah are simply mechanical contacts with the client by a New York-based law firm in an effort to fulfil obligations undertaken in New York. They fail to demonstrate that Rubin has "purposefully directed" its activities at the forum state.[41] Put another way, two molehills do not a mountain make.

For all these reasons, Rubin's business-related contacts with Utah are insufficient to establish personal jurisdiction. As a

---

**37.** *Id.* at 1363.

**38.** *Id.* at 1363–64.

**39.** Affidavit of Charles T. Rubin at p. 3.

**40.** Affidavit of Charles T. Rubin at p. 2.

**41.** *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174.

result, Rubin's motion to dismiss is GRANTED. The dismissal is, of course, without prejudice, as Miner and Mansfield are free to pursue this action in New York. In light of this disposition in favor of Rubin, Miner's motion for Rule 11 sanctions is obviously denied.

Although this disposition resolves this case, it may be useful for the parties to know that, even if the motion to dismiss had been denied, the court would have very seriously considered transferring this case to New York on grounds of *forum non conveniens.* Clearly all of the decisions surrounding the filing of the allegedly malicious lawsuit took place in New York.

The motion to dismiss is granted without prejudice. The clerk's office is directed to close the case.