(273 P.3d 804)
No. 106,176

Midwest Manufacturing, Inc., d/b/a Stillwater Minerals, *Appellant*, v. Wayne Ausland, *et al.*, *Appellees*.

222

Opinion filed March 30, 2012.

*Mark D. Murphy* and *Jeffrey M. Cook*, of The Murphy Law Firm, LLC, of Overland Park, for appellant.

*Louis J. Wade*, of McDowell, Rice, Smith & Buchanan, P.C., of Kansas City, Missouri, for appellees.

Before MCANANY, P.J., LEBEN and ATCHESON, JJ.

MCANANY, J.: Midwest Manufacturing, Inc., challenges the district court's dismissal on jurisdictional grounds of their malicious prosecution suit against Wayne and Eileen Ausland and their attorney, Charles Oakley. The district court dismissed the action, holding that the defendants lacked the necessary minimum contacts with Kansas to satisfy constitutional due process requirements for Kansas to exercise personal jurisdiction over them. We agree. Midwest will have to go to California to pursue the Auslands and their lawyer for malicious prosecution.

Midwest makes two arguments to support its claim of minimum contacts with Kansas: (1) the Auslands and Oakley submitted to personal jurisdiction by "intentionally filing a lawsuit in California that was calculated to cause injury to Midwest in Kansas," and (2) the Auslands submitted to personal jurisdiction because they transacted business in Kansas.

Midwest is a Kansas corporation that manufactures and sells animal feed supplements. Wayne and Eileen Ausland are residents of California. Charles Oakley is an attorney who resides and practices in California.

The Auslands own a ranch in California where they raise llamas and alpacas. Beginning in 1993 and continuing periodically through 2004, the Auslands placed telephone orders with Midwest for the purchase of feed supplements used to feed their animals. The

product was shipped from Kansas to the Auslands in California. Presumably the Auslands sent Midwest a check for the product, but there is no indication that the Auslands had any other contact with Kansas in the course of purchasing product from Midwest.

In 2008, the Auslands, represented by attorney Oakley, sued Midwest in California, claiming Midwest's feed supplements caused the death of a number of their animals. They claimed Midwest engaged in unlawful and deceptive business practices, committed deceit by concealment, violated the California Business and Professions Code, breached express and implied warranties, was liable for negligence and negligent misrepresentation, and was strictly liable. They sought compensatory and punitive damages, attorney fees, interest, and costs.

Midwest was served with California process in Kansas. It hired Kansas counsel to defend the California action. Midwest answered and in due time moved for summary judgment. The California court granted the motion; entered judgment against the Auslands; and assessed costs, but no attorney fees, against them. Midwest was required to pay its own Kansas counsel for defending the action.

In 2010, Midwest sued the Auslands and Oakley in Johnson County, Kansas, for malicious prosecution in instituting and pursuing the California action. The Auslands and Oakley moved to dismiss, claiming that the district court lacked personal jurisdiction over them. The district court sustained their motion and dismissed the case. Following an unproductive motion to alter or amend, Midwest appealed.

Whether the Kansas court had personal jurisdiction over the Auslands and Oakley is a question of law over which our review is unlimited. See *Shipe v. Public Wholesale Water Supply Dist. No. 25*, 289 Kan. 160, 165, 210 P.3d 105 (2009). In considering the issue we resolve all fact disputes in Midwest's favor. *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006). First, we must decide if the Kansas statutes or caselaw provide a basis for exercising jurisdiction over the defendants. If so, we then must decide whether a Kansas court exercising personal jurisdiction over the Auslands and Oakley complies with the due process require-

ments of the Fourteenth Amendment to the United States Constitution. See 282 Kan. at 440.

## KANSAS LONG-ARM STATUTE

Midwest asserts that the Kansas court had personal jurisdiction over the defendants pursuant to subsections (1)(A), (1)(B), and (1)(E) of the Kansas long-arm statute, K.S.A. 2010 Supp. 60-308(b). The relevant provisions are as follows:

"(b) *Submitting to jurisdiction.* (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:

(A) Transacting any business in this state;

(B) committing a tortious act in this state;

. . . .

(E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state."

The Kansas long-arm statute is intended to be broadly construed to reach the full extent permitted by the Due Process Clause. *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 894, 56 P.3d 829 (2002). The Kansas long-arm statute specifically requires that the transaction of business or the commission of the tortious act must be connected to the cause of action in question. 274 Kan. at 897-99.

Midwest claims that the Auslands and Oakley are subject to the jurisdiction of the courts of Kansas under K.S.A. 2010 Supp. 60-308(b)(1)(B) because they committed a tortious act in Kansas by filing a lawsuit in California that caused damages to Midwest in Kansas. Under Kansas law, "committing a tortious act in this state" is broadly construed under the long-arm statute to include tortious acts performed outside the state which cause injury in Kansas to a Kansas resident. *Taylor v. Phelan*, 912 F.2d 429, 432 (10th Cir. 1990); *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 778, 740 P.2d 1089 (1987); *Ling v. Jan's Liquors*, 237 Kan. 629, 633, 703 P.2d 731 (1985); see *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727-28 (10th Cir. 1984). It makes no difference

whether the injury was physical or economic. *Merriman*, 282 Kan. at 461. Here, the Auslands' and Oakley's actions caused Midwest to sustain damages in Kansas in the form of attorney fees incurred in defending the California action.

Accepting Midwest's allegations as true, and liberally construing the Kansas long-arm statute as we are required to do, Midwest has presented a prima facie case of personal jurisdiction under K.S.A. 2010 Supp. 60-308(b)(1). Therefore, we turn to the second step in the analysis, the due process requirements of the Fourteenth Amendment.

## DUE PROCESS

In accordance with *Kluin* our due process analysis is made based on the unique facts of the case. In doing so, we apply the "minimum contacts" standard from *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), as follows:

"When specific jurisdiction is asserted under the Kansas long arm statute, K.S.A. 60-308(b), due process requires that the nonresident defendant have certain minimum contacts with the forum in order for the exercise of jurisdiction to be constitutional. In considering whether the corporation's minimum contacts meet this standard, courts should consider the quality and nature of the defendant's activity in determining whether it is reasonable and fair to require defense in the forum, rendering jurisdiction consistent with traditional notions of fair play and substantial justice. Due process requires a demonstration that the nonresident defendant purposefully established minimum contacts with the forum state, thereby invoking the benefits and protections of its laws." *Merriman*, 282 Kan. 433, Syl. ¶ 15.

Here, Midwest contends that the Kansas court has jurisdiction over the Auslands and Oakley because they purposefully directed their activities against Midwest, a Kansas corporation, when they sued Midwest in California and caused Midwest to sustain damages in Kansas.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution sets the outer boundaries of a state's authority to proceed against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011). Due process requires that a defendant must have minimum contacts with the forum state such that the

maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice. *Internat. Shoe Co.*, 326 U.S. at 316. This notion protects the liberty interest of not being subject to the binding judgment of a court in a forum with which the defendant has established no meaningful contacts, ties, or relations. 326 U.S. at 319. Individuals must have "fair warning" that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

The key question in our due process analysis is whether the defendants' conduct and connections with Kansas were such that they should have reasonably anticipated being haled into court here. The fact that an actor can foresee causing injury in another state is not the standard. "Instead, 'the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' [Citation omitted.]" 471 U.S. at 474. The purposeful availment requirement ensures that a defendant will not be haled into court in a foreign jurisdiction solely as a result of random, fortuitous, or attenuated contacts. *Merriman*, 282 Kan. 433, Syl. ¶ 18.

The mere allegation of injury to a resident caused by an out-of-state defendant does not necessarily establish minimum contacts. Rather, the court must undertake a case-by-case analysis regarding the extent to which the defendant purposefully sought to obtain the benefits of the forum state's laws. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995).

A. *Intentional Tort*

Midwest asserts that the facts now before us satisfy the standard for specific personal jurisdiction in cases involving intentional torts as set forth in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). In *Calder*, the Hollywood actor Shirley Jones filed suit in California against the *National Enquirer* and its writer and editor for an allegedly libelous newspaper article. All the defendants were residents of Florida, and the article was written in Florida. The Court found that California had specific personal ju-

risdiction over the defendants because their actions were "expressly aimed at California." 465 U.S. at 789. The Court reasoned that the defendants had worked on an article "that they knew would have a potentially devastating impact upon [Jones]. And they knew that the brunt of that injury would be felt by [Jones] in the State in which she lives and works and in which the National Enquirer has its largest circulation." 465 U.S. at 789-90. The Court reasoned: "An individual injured in California need not to go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." 465 U.S. at 790.

Midwest argues that under *Calder*, the Kansas court had specific personal jurisdiction over the defendants in this action for malicious prosecution once Midwest showed: (1) an intentional action expressly aimed at the forum state, and (2) knowledge that the injury would be felt in the forum state. See *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008).

Midwest also relies on the fact that in the California suit the Auslands and Oakley perfected service of process over Midwest here in Kansas. It claims this is enough of a contact to justify now asserting jurisdiction over the Auslands and Oakley in Kansas. They rely on a number of federal district court cases for support. See *3H Enterprises, Inc. v. Dwyre*, 182 F. Supp. 2d 249, 257 (N.D.N.Y. 2001); *Schleit v. Warren*, 693 F. Supp. 416, 422-23 (E.D. Va. 1988); *Hamilton, Miller, Hudson & Fayne Travel v. Hori*, 520 F. Supp. 67, 70 (E.D. Mich. 1981).

To the contrary, the United States District Court for the District of Kansas has held that a law firm from another state does not submit to the jurisdiction of Kansas courts when a cause of action arises out of the firm's representation of a Kansas resident in litigation taking place in other forums. *Biederman v. Schnader, Harrison, Siegal & Lewis*, 765 F. Supp. 1057, 1061 (D. Kan. 1991) (contact with Kansas during discovery phase of suit was not enough to confer jurisdiction even though the out-of-state attorneys made three trips to Kansas); see *Paul v. Carroll*, No. 00-4187-DES, 2001 WL 98602, at *6 (D. Kan. 2001) (unpublished opinion) (attorney's limited contacts with Kansas did not give rise to personal jurisdiction when litigation was in an out-of-state forum).

In *Miner v. Rubin & Fiorella, LLC*, 242 F. Supp. 2d 1043, 1044-46 (D. Utah 2003), employees of a Utah corporation brought suit in Utah against a New York law firm for malicious prosecution, intentional infliction of emotional distress, and abuse of process for having sued them in New York and serving them with process in Utah. The *Miner* court found that neither service of process in Utah in the prior suit nor the law firm's business-related contacts with the Utah corporation established that the law firm had purposefully directed its activities at Utah. 242 F. Supp. 2d at 1047, 1050. Thus, the court granted the firm's motion to dismiss for lack of personal jurisdiction.

In *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), *cert. denied* 475 U.S. 1122 (1986), an Indiana resident sued three California lawyers in Indiana for malicious prosecution. The California lawyers had previously sued Wallace in Indiana. In the prior lawsuit, the California lawyers had conducted discovery and caused Wallace to respond to five complaints in Indiana. The court found that Indiana did not have personal jurisdiction over the California lawyers. The *Wallace* court stated that "it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts." 778 F.2d at 394.

The *Wallace* court also rejected a broad construction of *Calder*. The court concluded that the holding in *Calder* did not stand for the proposition that any plaintiff may hale any defendant into court in the plaintiff's home state as long as the defendant has committed an intentional tort against the plaintiff. 778 F.2d at 394. The *Wallace* court pointed out that in *Calder*, both the allegedly libelous story and the resulting harm were tied to California. The *Wallace* court noted that its situation was distinguishable because the California attorneys' only contact with Indiana was through service of process and other attenuated actions. Accordingly, the Seventh Circuit held that the California attorneys took no actions that would create the necessary connection with Indiana for them to reasonably anticipate being haled into court there. 778 F.2d at 394-95.

The Fifth Circuit has also held that allegations of malicious prosecution and abuse of process did not create personal jurisdiction over a defendant whose sole tie to the jurisdiction was through the

service of process on the plaintiff in the earlier lawsuit. *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir. 1997). The *Allred* court reasoned that even if there were damages and injury from these particular torts felt in the forum state, Mississippi, the requirements of due process prevent a Mississippi court from exercising jurisdiction. 117 F.3d at 285-87.

Filing the California lawsuit created no meaningful contact with Kansas. To find personal jurisdiction over the defendants, the court must find that the defendants purposefully availed themselves to the laws of Kansas, the forum state. See *Trujillo v. Williams*, 465 F.3d 1210, 1219-20 (10th Cir. 2006); *Far West Capital, Inc.*, 46 F.3d at 1079. Simply obtaining service of process over Midwest in Kansas is not enough to create specific personal jurisdiction over the defendants.

In *Calder*, the defendants' conduct was purposefully directed to defaming Shirley Jones and causing damage to her professional reputation while boosting the *National Enquirer's* circulation in its major consumer market. Here, Midwest concedes in its brief: "Midwest's damages are the expenses it suffered in defending that lawsuit." The damages sustained by Midwest are expenditures incurred by every defendant who resists a plaintiff's claim. Under Midwest's theory, every plaintiff and every plaintiff's counsel bringing an action of any type against a nonresident defendant in the plaintiff's home forum is subject to being haled into court in a malicious prosecution action in the nonresident's home forum if the nonresident defendant ultimately prevails in the original action. We find no support for so sweeping an application of the Kansas long-arm statute.

## B. *Transacting Business in Kansas*

Midwest also claims the Auslands submitted to personal jurisdiction in Kansas by transacting business in Kansas: purchasing feed supplements from Midwest from 1993 to 2004.

To establish specific jurisdiction based upon transacting business in the forum state, three factors must exist: (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be

connected with, the act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend the traditional notions of fair play and substantial justice. *Kluin*, 274 Kan. at 895.

Midwest relies heavily on the decision in *Burger King* to support the claim that the Auslands transacted business in Kansas. Midwest does not explain how this theory extends jurisdiction to the California lawyer who sought to assert California causes of action for a California client in a California court. And with respect to the Auslands, Midwest does not explain how these consumers, who apparently are the end-users of Midwest's products, have the same status as the Michigan Burger King business franchisees engaged in a commercial retail enterprise in *Burger King*.

In any event, to exercise long-arm jurisdiction in Kansas over the California defendants based upon them having transacted business in Kansas, there must be evidence that the Auslands and their California lawyer availed themselves of the privilege of conducting business in Kansas to the extent that they, having enjoyed the benefits and protections of Kansas law, should have reasonably anticipated that they might have to submit to the burden of being sued in Kansas as well. We find no such evidence to justify extending the jurisdiction of the Kansas courts to these defendants.

In making this determination, we consider " 'the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.' " *Anderson v. Heartland Oil & Gas, Inc.*, 249 Kan. 458, 467, 819 P.2d 1192 (1991) (quoting *White v. Goldthwaite*, 204 Kan. 83, 460 P.2d 578 [1969]). Factors to be considered include: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interest of the judicial system in securing the most efficient resolution of the controversy, and the shared interest of several states in furthering fundamental social policies. *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach*, 33 Kan. App. 2d 593, 605-06, 106 P.3d 74 (2005).

Kansas' exercise of jurisdiction over the Auslands on the basis of their position as consumers of Midwest's feed supplements offends

traditional notions of fair play and substantial justice. Although Kansas has an interest in protecting its resident corporations, Midwest assumed the risk of being subjected to suits in California when it chose to sell its products to California residents. The Auslands' lawsuit was based on California law. Once service was obtained over Midwest in Kansas, all proceedings and discovery in the California suit apparently took place in California. That California evidence will be the basis for Midwest's claim that the suit was maliciously prosecuted. In its Kansas petition Midwest cites extensively from the court's findings in the California case. Other than as a matter of convenience to Midwest, we find no other *Anderson* factor that supports Kansas exercising personal jurisdiction over these defendants. Traditional notions of fair play and substantial justice prevent Kansas from exercising jurisdiction over the Auslands and Oakley.

Oakley did not engage in any activities in Kansas that would subject him to the jurisdiction of the State of Kansas based solely on his representation of the Auslands in the California lawsuit. And even though the Auslands' contacts with Kansas were more extensive, at no time did the Auslands, as consumers of Midwest's products, engage in any activities in Kansas that reveal an intent to invoke or benefit from the protection of Kansas law. Their products liability lawsuit against Midwest was filed and prosecuted entirely in California. Kansas' interest in protecting its residents from tortfeasors is balanced by traditional notions of fair play and substantial justice. The Auslands had insufficient personal contacts with the State of Kansas to expose them to the jurisdiction of the Kansas courts. Accordingly, the district court correctly granted the Auslands and Oakley's motion to dismiss.

Affirmed.