NOT DESIGNATED FOR PUBLICATION

Nos. 124,942
124,943

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

L.S.,
*Appellee*,

v.

C.S. and E.S.,
*Appellants*.

MEMORANDUM OPINION

Appeal from Ford District Court; LAURA H. LEWIS, judge. Opinion filed November 10, 2022.
Reversed.

*Van Z. Hampton*, of Warrior Lawyers International, of Dodge City, for appellants.

*Casey Johnson* and *Noah Hahs*, of Kansas Legal Services, Inc., of Kansas City and Dodge City,
for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

PER CURIAM:  The Ford County District Court granted L.S. and her daughter,
W.S., final protection from stalking (PFS) orders against each of L.S.'s parents, C.S. and
E.S., who are both residents of Alabama. After fleeing her parents' house in January
2021, L.S. moved across the country to Montana. Her parents filed legal actions in both
Alabama and Montana to gain custody of their granddaughter and to force their daughter
to return home. But L.S. and W.S. soon left Montana and moved to Dodge City. Once in
Kansas, L.S. filed PFS petitions against each of her parents, alleging they were engaging
in a continual course of conduct and abusing the legal system by trying to force her back

1

to Alabama. C.S. and E.S. filed limited appearances to argue that the district court lacked personal jurisdiction over them because none of the alleged acts occurred in Kansas and they had no contact with the state. The district court found it had personal jurisdiction over the defendants and granted a final PFS order against each parent.

C.S. and E.S. appeal, challenging the district court's finding of personal jurisdiction and the sufficiency of the evidence supporting the PFS orders. Finding the district court lacked personal jurisdiction over the nonresident defendants under the Kansas long-arm statute, K.S.A. 2021 Supp. 60-308, we reverse the district court's judgment and vacate the final PFS orders as void for lack of personal jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

L.S., born in 1992, and her daughter, W.S., born in 2014, lived with L.S.'s father and mother, C.S. and E.S., in their home in Alabama. According to L.S., her parents—specifically her father—believed that young unmarried women should live at home until marriage and sabotaged her prior attempts to get a job and move out. On January 1, 2021, L.S. took her daughter with only the belongings they could carry and left for the airport, relocating to Stevensville, Montana. L.S. later explained that she fled Alabama because she needed to "leave [her parents'] controlling environment."

Soon after L.S. and W.S. relocated to Montana, a petition alleging that W.S. was a child in need of care was filed in Franklin County, Alabama. L.S. believed the action was initiated by her parents, but the case was dismissed because she and W.S. were living in Montana. Although the record is unclear, it appears that C.S. and E.S. also sought custody of W.S. in Alabama around the same time.

E.S. allegedly called a local police department in Montana and requested they perform a welfare check on L.S. and her daughter. E.S. called in another welfare check

2

shortly after the first. L.S. soon noticed that her mother was also logging into her email accounts. Around this time, L.S. requested that her parents send her the items she had left behind at their house—including her computer, iPhone, clothing, and social security cards and birth certificates for W.S. and herself. Although L.S. provided her parents with her Montana address so they could send the items, the parents did not do so.

Not long after L.S. provided her parents with her address, they filed for custody of W.S. in Montana. But, in June 2021, before L.S. was served with the custody action, she and W.S. moved to Kansas. L.S. explained that she took her daughter and left Montana "because the housing economy and the job market . . . were not conducive to starting a family," not because she was fleeing from her parents' attempts to obtain custody of W.S. L.S. was later served in Kansas with the Montana custody action. In emails between the attorneys in Montana, E.S.'s attorney advised that E.S. was likely to file a "new action . . . in Kansas in the coming weeks." But C.S. and E.S. never followed through with filing a lawsuit for custody of W.S. in Kansas.

On October 14, 2021, L.S. filed PFS petitions against C.S. and E.S. in the Ford County District Court. In attachments to her petition, L.S. alleged that C.S. and E.S. had kept her in a "controlling and mentally abusive environment," had tried to make her stay in their house, had prevented her from maintaining employment, had filed two lawsuits alleging that she was unfit to raise her daughter, and had tried to gain custody of W.S. in Montana and Alabama. The petitions specifically requested an order restraining C.S. and E.S. from "abusing, molesting or interfering with [her] privacy rights" and from "following, harassing, telephoning, contacting or otherwise communicating with [her]." C.S. and E.S. were served with the petitions in Alabama.

C.S. and E.S. filed identical, pro se notices of limited appearance and motions to dismiss for lack of personal jurisdiction. In their motions, C.S. and E.S. noted that none

3

of the acts L.S. complained of had occurred in Kansas, that they had not been Kansas residents for nearly 20 years, and that the Kansas court lacked personal jurisdiction.

On November 18, 2021, the district court held a joint hearing on the PFS petitions. L.S. appeared in person and the defendants did not appear. The district court denied the defendants' motions to dismiss, noting that although none of the acts outlined in L.S.'s petition occurred in Kansas, the court still had personal jurisdiction over C.S. and E.S. because they had been personally served. The district court heard testimony from L.S., under examination by the court, and she recounted the allegations in her petitions. The district court allowed L.S. to amend her petitions so the requested relief covered W.S.

After reviewing the petitions and hearing the testimony, the district judge stated:

> "I am going to find that this is a continuing series of events that it sounds to the Court it is clear that it started outside of the state of Kansas, in the state of Alabama, continued into the state of Montana, and that is course of conduct, specifically harassment, that continues now that you're living in the state of Kansas. Therefore, I do believe that there is sufficient clear and convincing evidence which is actually—the Court only has to find a preponderance of the evidence, meaning it's more likely than not that this behavior has occurred. However, I do believe that this behavior had occurred. However, I do believe that there's an even higher burden that's been met. So I will grant you a protection from stalking against both [C.S.] and [E.S.]."

The district court proceeded to collect personal information about C.S. and E.S. to enter the final orders into the NCIC National Database. The district court then formally announced its ruling, noting that it had personal and subject matter jurisdiction and that although "some of these events occurred outside the state of Kansas," L.S.'s parents' behavior was "ongoing and continuing" and L.S. had presented sufficient evidence to support that her parents were "a credible threat to the physical safety" of L.S. and W.S.

4

C.S. and E.S. obtained Kansas counsel, who entered an appearance on their behalf, and each filed a "Motion to Alter or Amend Judgment and to Dismiss Action." In the motions, C.S. and E.S. attacked the district court's finding of personal jurisdiction, noting that they had not been present in Kansas and that none of the alleged acts of harassment took place in Kansas—all the conduct supporting the orders occurred in either Alabama or Montana. C.S. and E.S. requested the district court to dismiss L.S.'s actions for lack of jurisdiction.

The district court held a hearing on the motions on January 7, 2022. L.S. obtained an attorney to represent her at the hearing. C.S. and E.S. argued that the district court had erred in finding it had personal jurisdiction over them because they had committed no acts inside Kansas and had not submitted to jurisdiction in Kansas. They also argued the evidence at the first hearing was insufficient to support the PFS orders because any actions they had taken had a legitimate purpose. L.S.'s attorney maintained that C.S. and E.S. had established minimum contacts with Kansas sufficient to establish personal jurisdiction. The district court denied the motions, finding it had personal jurisdiction over C.S. and E.S. under K.S.A. 2021 Supp. 60-308(b)(1)(B) and (b)(1)(L). The court explained that C.S. and E.S. had been personally served and had committed a "tortious act in this state, i.e., intentionally—intentional infliction of emotional distress, tort of outrage, breach of privacy, defamation, etc." C.S. and E.S. each timely appealed the district court's judgment. This court consolidated the appeals.

PERSONAL JURISDICTION

C.S. and E.S. argue that the district court erroneously found that it had personal jurisdiction over them because they did not avail themselves to the privilege of conducting activities in Kansas and they did not invoke the benefits and protections of Kansas laws. L.S. contends that her parents' harassing "course of conduct through family members, their attorneys, and the past cases evidenced in Alabama and Montana" gave

the district court personal jurisdiction under K.S.A. 2021 Supp. 60-308(b)(1)(B) and (b)(1)(L).

Appellate courts exercise unlimited review of jurisdictional issues because whether jurisdiction exists is a question of law. *Norris v. Kansas Employment Security Bd. of Review*, 303 Kan. 834, 837, 367 P.3d 1252 (2016). As the plaintiff/petitioner, L.S. bears the burden of establishing the district court's jurisdiction over C.S. and E.S. *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006); *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 893, 56 P.3d 829 (2002).

Before turning to Kansas law on personal jurisdiction of courts over nonresident defendants, we will briefly survey how other states have addressed whether personal jurisdiction is required to enter a protective order against a nonresident defendant—even though neither party has discussed decisions from other states in their briefing. Cases from other states have reached conflicting conclusions. Several states have found that personal jurisdiction is a prerequisite for a court to issue *any* protective order against a nonresident defendant. See, e.g., *Becker v. Johnson*, 937 So. 2d 1128, 1131 (Fla. Dist. Ct. App. 2006) (holding "[t]he 'constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State,'" and finding nonresident husband's phone calls were insufficient contacts); *T.L. v. W.L.*, 820 A.2d 506, 515-16 (Del. Fam. Ct. 2003) (holding nonresident husband lacked minimum contacts to make it reasonable for him to appear and defend against his wife's request for a protective order and noting that she could seek such an order in the state where the conduct occurred).

On the other hand, at least one state—Iowa—has found that personal jurisdiction over a nonresident defendant is unnecessary to issue a protective order on behalf of a resident under the "status" exception to personal jurisdiction. *Bartsch v. Bartsch*, 636 N.W.2d 3, 6 (Iowa 2001) (upholding protective order over a nonresident because the

6

court's ruling did not purport to grant affirmative relief against the defendant husband, but merely preserved the protected status accorded to his wife as a resident of the state).

But most states have drawn a distinction between temporary and final—or prohibitive and affirmative—orders, finding that personal jurisdiction is not required to enter temporary orders to protect the status of their resident, but it is required to enter a final order that imposes obligations on the nonresident defendant and is accompanied by collateral consequences, such as registration on national databases and the potential loss of the constitutional right to a firearm. See *Fox v. Fox*, 197 Vt. 466, 106 A.3d 919 (2014); *Hemenway v. Hemenway*, 159 N.H. 680, 992 A.2d 575 (2010); *Caplan v. Donovan*, 450 Mass. 463, 879 N.E.2d 117 (2008); *Spencer v. Spencer*, 191 S.W.3d 14 (Ky. Ct. App. 2006); *Shah v. Shah*, 184 N.J. 125, 875 A.2d 931 (2005).

The orders at issue in this case were final orders, accompanied by collateral consequences for the nonresident defendants—C.S. and E.S. were placed on the NCIC National Database. Thus, under the rationale of most jurisdictions that have addressed the matter, the district court is required to have personal jurisdiction over the nonresident defendant to enter final orders of protection from abuse or stalking.

*Kansas long-arm statute*

In Kansas, personal jurisdiction of courts over nonresident defendants is governed by the Kansas long-arm statute, K.S.A. 2021 Supp. 60-308(b). We will set forth the part of that statute at issue in this case:

"(b) *Submitting to jurisdiction*. (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's

representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:

  . . . .

  (B) committing a tortious act in this state;

  . . . .

  (L) having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state."

A two-step analysis is used when determining whether a Kansas court has personal jurisdiction over a nonresident defendant. First, the court must determine whether statutes—typically K.S.A. 2021 Supp. 60-308(b)—or caselaw provide a basis for the exercise of jurisdiction over a particular defendant. If there is a basis for jurisdiction under the long-arm statute, the court must next inquire if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution. *Merriman*, 282 Kan. at 440; *Kluin*, 274 Kan. at 894. That said, depending on the statutory basis relied on, these steps are coterminous as Kansas' long-arm statute permits the exercise of any jurisdiction consistent with the Kansas and United States Constitutions. See K.S.A. 2021 Supp. 60-308(b)(1)(L).

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). Under the due process analysis, a court must determine whether a defendant has minimum contacts with Kansas so that they should reasonably anticipate being hauled into court in Kansas. If such contacts exist, the remaining question is whether the exercise of personal jurisdiction would offend traditional notions of "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

At the first hearing on L.S.'s PFS petitions, the district court stated, "[T]he fact that [C.S. and E.S.] were personally served does give the Court personal jurisdiction over

8

both of them." The district court seemed to believe that any action filed under the Protection from Stalking, Sexual Assault or Human Trafficking Act, K.S.A. 2021 Supp. 60-31a01 et seq., conveyed personal jurisdiction of the court over any defendant served with process. But simply obtaining service of process over C.S. and E.S. cannot create personal jurisdiction, especially when that service was not even carried out in this state. There is no provision in K.S.A. 2021 Supp. 60-31a01 et seq. or in the Kansas long-arm statute, K.S.A. 2021 Supp. 60-308, that grants a Kansas court personal jurisdiction over out-of-state defendants simply by obtaining personal service of process against the defendants.

At the hearing on the motion to alter or amend judgment, the district court found two statutory bases for the exercise of personal jurisdiction over C.S. and E.S.: (1) under K.S.A. 2021 Supp. 60-308(b)(1)(B) by their commission of a tortious act in the state and (2) under K.S.A. 2021 Supp. 60-308(b)(1)(L) based on their minimum contacts with Kansas. We will examine each of these provisions.

*Committing a tortious act in this state*

Even when accepting L.S.'s testimony and allegations as true and broadly construing K.S.A. 2021 Supp. 60-308(b)(1)(B), the district court's finding that L.S. presented a prima facie case of personal jurisdiction because C.S. and E.S. committed a tortious act in Kansas is erroneous. The district court did not explain its finding in detail, but it clarified that "the committing of the tortious act in this state, i.e., intentionally—intentional infliction of emotional distress, tort of outrage, breach of privacy, defamation, etc., would also place [C.S. and E.S.] in—under the Kansas long-arm statute."

Although L.S.'s allegations might be read as supporting a claim of abuse of process in Montana or Alabama, L.S. did not specifically allege in her petitions that her parents had committed any torts within the state. Essentially, L.S. requested the

9

protection from stalking orders to preemptively compel her parents not to use Kansas' legal system in their attempts to gain custody of W.S.—none of their alleged conduct occurred in or was aimed at Kansas.

"Under Kansas law, 'committing a tortious act in this state' is broadly construed under the long-arm statute to include tortious acts performed outside the state which cause injury in Kansas to a Kansas resident. It makes no difference whether the injury was physical or economic." *Midwest Manufacturing, Inc. v. Ausland*, 47 Kan. App. 2d 221, Syl. ¶ 3, 273 P.3d 804 (2012). That said, this basis for personal jurisdiction does not "replace the need to demonstrate minimum contacts that constitute purposeful availment, that is conduct by the nonresident defendant that invoked the benefits and protections of the state or was otherwise *purposely directed toward a state resident*." (Emphasis added.) *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 282, 275 P.3d 869 (2012); see also *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995) ("[C]ourts finding personal jurisdiction based upon an intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction. Instead, they have emphasized that the defendant had additional contacts with the forum.").

If the district court's interpretation of K.S.A. 2021 Supp. 60-308(b)(1)(B) is correct, then L.S. could move to Oklahoma, and then to Texas, and then to any other state, and every new state she resided in would have personal jurisdiction over C.S. and E.S. based on their commission of a tortious act. Construing the statutory provision this broadly would render it meaningless.

C.S. and E.S. did not commit any tortious acts aimed at Kansas—all the conduct alleged occurred in Montana or Alabama before L.S. moved to Kansas. While the district court would likely have had jurisdiction over C.S. and E.S. if they had filed a custody lawsuit in Kansas (thereby seeking the benefits and protections of this state), they did not do so. The actions outlined in L.S.'s petition and her testimony did not include tortious

10

conduct aimed into this state. As a result, K.S.A. 2021 Supp. 60-308(b)(1)(B) did not provide a basis for the district court to exercise jurisdiction over C.S. and E.S.

*Minimum contacts with Kansas*

Next, this court must consider whether C.S. and E.S. had sufficient contacts with Kansas to exercise personal jurisdiction under K.S.A. 2021 Supp. 60-308(b)(1)(L). When K.S.A. 2021 Supp. 60-308(b)(1)(L) is used as a basis for jurisdiction, the long-arm statute inquiry and the constitutional due process inquiry merge. Thus, the question simply becomes whether the exercise of jurisdiction comports with due process. As noted above, due process requires a showing that "the nonresident defendant purposely established minimum contacts with the forum state, thereby invoking the benefits and protections of its laws." *In re Hesston Corp.*, 254 Kan. 941, Syl. ¶ 3, 870 P.2d 17 (1994).

The United States Supreme Court has made clear that "'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King Corp.*, 471 U.S. at 475. The relationship between a nonresident defendant, the forum, and the defendant's suit-related conduct must manifest a substantial connection with the state. *Walden*, 571 U.S. at 283-84; see also *Merriman*, 282 Kan. 433, Syl. ¶ 18 ("The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.").

L.S. contends that the district court had jurisdiction over her parents because their pattern of harassing conduct crossed state lines into Kansas. More specifically, L.S. characterizes the following as her parents' contacts with Kansas:  (1) E.S. contacting a Kansas sheriff to carry out service of process for the Montana custody case; (2) the service of process of that Montana case at L.S.'s residence in Kansas; (3) threatening to file a custody case in Kansas by their attorney; and (4) contacting L.S. through family

11

members. The district court similarly characterized their contacts as "continuing even after [L.S.] moved to Dodge City, including the contact with the sheriff, the service of process on [L.S.] here in Kansas, threats of additional filings here in the state of Kansas and ongoing contact that occurred through—at the behest of the—of [C.S. and E.S.]."

The district court's findings related to C.S.'s and E.S.'s "ongoing contact" with L.S. and the state of Kansas are not supported by the record. As both L.S. and the district court recognized, none of the conduct alleged in L.S.'s petition occurred in Kansas. And "[t]he mere allegation of injury to a resident caused by an out-of-state defendant does not necessarily establish minimum contacts." *Ausland*, 47 Kan. App. 2d at 227.

Instead, the minimum contacts analysis demands that courts make a case-by-case analysis of whether a defendant "purposefully sought to obtain the benefits of the forum state's laws." 47 Kan. App. 2d at 227. L.S. may have reasonably experienced trauma and injury based on her parents' past behavior after her move to Kansas, but any injury that she suffered was not caused by conduct that was aimed at this state. While it is true that they accomplished service of process of the Montana case and were apparently considering filing another such case in Kansas, there is no other evidence to suggest they made any contact with L.S. while she was in Kansas. See *Ausland*, 47 Kan. App. 2d at 230 (holding that obtaining service over the plaintiff in a prior lawsuit was not a substantial enough contact to create specific jurisdiction).

L.S. testified that her uncle contacted her to warn of her parents' intent to try to gain custody of W.S.—this communication was not made on her parents' behalf and is not attributable to them in the minimum contacts analysis. The only other contact was through L.S.'s sister, who appears to have discussed their parents—but there was no allegation that she did so at the behest of C.S. and E.S. Even if such an allegation had been made, a single communication would not constitute minimum contacts sufficient for a Kansas court to exercise jurisdiction. See *Kearns v. New York Community Bank*, No.

12

115,470, 2017 WL 1148418, at *7 (Kan. App. 2017) (unpublished opinion) ("'It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts.'") (quoting *Olsen v. Mapes*, 139 Fed. Appx. 54, 57 [10th Cir. 2005] [unpublished opinion]).

"'A case should not be dismissed for want of jurisdiction as being outside the scope of the statute, unless by no reasonable construction of the language could it be said to fall within the statute's terms.'" *Aeroflex*, 294 Kan. at 274. But the record simply does not support that C.S. and E.S. established minimum contacts with Kansas. As the United States Supreme Court has repeatedly emphasized, any minimum contacts analysis must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285.

Here, the only contact that C.S. and E.S. had with L.S. that could be considered to have occurred within Kansas was their attorney's representation to L.S.'s attorney that they intended to file a custody lawsuit in Kansas if the Montana case was dismissed. C.S. and E.S. had no direct contact with their daughter and granddaughter in Kansas, and their only contact with the state was in acquiring service of process through the Ford County Sheriff's Office for their Montana-based custody case. While there is no requirement that a defendant be physically present in the forum state for the state to obtain personal jurisdiction, C.S.'s and E.S.'s conduct and minute contact with Kansas cannot form the necessary connection to allow jurisdiction over them.

In sum, we find the district court lacked personal jurisdiction over C.S. and E.S. under K.S.A. 2021 Supp. 60-308(b)(1)(L). C.S. and E.S. did not have minimum contacts with Kansas so that granting personal jurisdiction over them would be consistent with fundamental notions of fair play and substantial justice. C.S. and E.S. did not avail themselves of the privilege of conducting activities within Kansas, nor did they invoke the benefits and protections of Kansas laws. As a result, we reverse the district court's

13

judgment and vacate the final PFS orders as void for lack of personal jurisdiction. We need not address whether there was sufficient evidence to support the PFS orders.

Reversed.