NOT DESIGNATED FOR PUBLICATION

No. 115,470

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DARREN K. KEARNS,
*Appellant*,

v.

NEW YORK COMMUNITY BANK and
JAMES RICCA,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed March 24, 2017. Affirmed.

*Darren K. Kearns*, pro se appellant.

*Kenneth C. Jones*, of Lewis Rice LLC, of Overland Park, for appellees.

Before GARDNER, P.J., POWELL, J., and HEBERT, S.J.

*Per Curiam*:  Darren Kearns sued New York Community Bank (NYCB), James Ricca, and First American Title Insurance Company for harm resulting from a New York real estate transaction. First American settled almost immediately, but NYCB and Ricca filed a preanswer motion to dismiss, arguing in part that the district court lacked personal jurisdiction and Kansas was an inconvenient forum. After allowing Kearns to conduct discovery on those two issues, the district court granted the motion. On appeal, Kearns claims that the district court had personal jurisdiction, Kansas was a convenient forum, and he was not given enough time to conduct discovery. We disagree and affirm.

1

The heart of this dispute centers on property located in Flushing, New York, with numerous lawsuits filed by Kearns based on the following events. Kearns and David Sheldon purchased the property at a sheriff's sale in February 2006. The sheriff distributed the proceeds of the sale to creditors who had an interest in the property, which included a payment of $95,054.47 to NYCB, a mortgagee. Unfortunately, this payment failed to satisfy the mortgage debt. NYCB contacted Sheldon and requested that he pay the additional amounts of interest and fees. Apparently, the parties disputed over a period of several months whether Sheldon owed NYCB any additional monies.

During the time of Sheldon's dispute with NYCB, on August 18, 2006, Sheldon and Kearns entered into a listing agreement with Julie Wong and Winzone Realty, Inc. to sell the property. Wong presented Tara Khanal as a potential buyer with a preliminary offer to purchase the property for $675,000 and advised Sheldon and Kearns that Khanal was prequalifed and could close within 30-45 days. In September 2006, Khanal, through her attorney David Melo, negotiated a contract of sale and obtained a title policy for the property. Khanal supposedly obtained a loan commitment from Network Mortgage, Inc. and its broker, and she wrote a check for the down payment. Shortly before the sale was to close in October 2006, Melo informed Sheldon and Kearns that Khanal did not have a loan commitment; due to lack of financing, the closing date was delayed.

Ultimately, Khanal was unable to secure financing, and the sale was cancelled. Sheldon and Kearns then advised the escrow agents that they objected to the release of any escrowed funds to Khanal because they wanted liquidated damages. Khanal filed suit seeking return of the $50,000 escrow deposit. The trial court ordered Sheldon and Kearns to return the deposit. However, this order was overturned on appeal, with the appellate court holding that the default judgment was improperly granted. See *Sheldon v. Khanal*, No. 08-cv-3676 (KAM) (LB), 2009 WL 3233093, at *4 (E.D.N.Y. 2009) (unpublished

opinion); *Khanal v. Sheldon*, 74 A.D.3d 894, 895, 904 N.Y.S.2d 453 (2010). Sheldon and Kearns ultimately sold the property to a third party for $630,000. The buyer financed the purchase through Wells Fargo Bank, and title insurance was obtained through First American Title Insurance Company.

On October 1, 2006, NYCB filed suit against Sheldon and Kearns, along with the original owners of the property, in the Supreme Court of New York (New York's state trial court) in an attempt to obtain a second foreclosure of the property and thereby collect its deficiency. Surprisingly, neither Sheldon nor Kearns filed an answer, and NYCB obtained a default judgment in September 2008. Sheldon and Kearns sought to set aside the default judgment in December 2008, but their motion was denied, and the denial was upheld on appeal. *New York Community Bank v. Vermonty*, 68 A.D.3d 1074, 1075, 892 N.Y.S.2d 137 (2009).

In early 2007, Sheldon and Kearns brought suit in the United States District Court for the District of Kansas. *Sheldon v. Khanal*, No. 07-2112-KHV, 2007 WL 4233628 (D. Kan. 2007) (unpublished opinion). It appears they sued everyone associated with their attempt to buy and then sell the New York property: NYCB; Khanal and her attorney, Melo; Network Mortgage, Inc., and its broker; Wong, the realtor, and Winzone Realty; another mortgage company, Option One Mortgage Corp.; Rosemarie Klie and the law firm of Sweeney, Gallo, Reich, and Bolz, LLP (apparently the law firm that handled Khanal's suit against Sheldon and Kearns for return of the escrowed funds); and James Cantanno and the law firm of Forchelli, Curto, Schwartz, Mineo, Carlino and Cohn, LLP (the firm that brought the second foreclosure suit on behalf of NYCB). Kearns represented himself and Sheldon in the matter.

Sheldon and Kearns alleged numerous state law claims against the defendants, including claims for breach of contract, bad faith performance, breach of fiduciary duty, intentional abuse of process, negligent and intentional slander of title, and many other tort

3

claims. More specifically, Sheldon and Kearns alleged that NYCB and its attorneys negligently and intentionally abused the legal process by filing the second foreclosure suit in New York and negligently and intentionally slandered the title to the property through the suit. These defendants sought dismissal of the suit principally on personal jurisdiction grounds. The court ruled that it lacked personal jurisdiction over NYCB and its attorneys, dismissed the bulk of the remaining claims against the other defendants, and ultimately transferred venue of the case to the United States District Court for the Eastern District of New York. See *Sheldon v. Khanal*, 605 F. Supp. 2d 1179, 1184-87, 1189 (D. Kan. 2008). That court ultimately dismissed Sheldon and Kearns' claims for numerous reasons, including failure to state a claim upon which relief could be granted, lack of subject-matter jurisdiction—they had failed to establish sufficient amounts in controversy to meet the jurisdictional amount necessary for diversity jurisdiction—and res judicata. *Sheldon*, 2009 WL 3233093, at *1. The Second Circuit Court of Appeals affirmed all of the dismissals except the dismissal against Khanal. The court vacated the dismissal of the breach of contract claim against Khanal and remanded, finding that the dismissal could not be affirmed on res judicata grounds because the district court erroneously relied on the state court judgment concerning the escrow money that was ultimately reversed. *Sheldon v. Khanal*, 396 Fed. Appx. 737, 740 (2d Cir. 2010). On remand, the remaining claims against Khanal were dismissed for lack of subject matter jurisdiction. *Sheldon v. Khanal*, No. 08-cv-3676 (KAM) (LB), 2011 WL 3876970, at *10 (E.D.N.Y. 2011) (unpublished opinion).

Kearns then tried to seek relief by filing suit against NYCB, First American, and James Ricca—apparently another member of the law firm representing NYCB—in Missouri state court, alleging various state law claims including breach of contract, breach of fiduciary duty, and vexatious refusal to pay. NYCB and Ricca moved to dismiss, *inter alia*, for lack of subject matter and personal jurisdiction and res judicata. First American moved to dismiss for lack of personal jurisdiction and forum non conveniens. The trial court granted those motions. Kearns appealed, but his appeal was

4

dismissed on procedural grounds. *Kearns v. New York Community Bank*, 389 S.W.3d 294, 297 (Mo. App. 2013).

On January 2, 2015, Kearns filed a pro se petition in the district court of Johnson County, Kansas. The petition named NYCB, with its principal place of business in New York; Ricca, a New York resident; and First American, with its principal place of business in California, as defendants. Kearns, a Missouri resident with a law office in Overland Park, alleged claims of breach of contract, breach of fiduciary duty, fraud, common-law conspiracy, refusal to pay without just cause or excuse, and breach of duty to act in good faith and without negligence. These claims, according to Kearns, resulted from a New York real estate transaction involving him, the defendants, and Sheldon. Kearns also alleged that the district court had personal jurisdiction over the defendants and Johnson County was the proper venue.

Shortly after Kearns filed the petition, First American settled and was dismissed from the case. NYCB and Ricca, as they did in the Missouri litigation, filed a preanswer motion to dismiss, arguing for dismissal based on lack of personal jurisdiction, forum non conveniens, res judicata, collateral estoppel, and failure to state a claim. The district court initially focused on the jurisdiction and forum issues and allowed limited discovery. Kearns made several attempts to discover evidence through requests for admissions and production of documents. NYCB and Ricca maintained that they had responded to the requests honestly, that they could not produce documents that did not exist, and that some of Kearns' requests were vague and confusing. The district court found that NYCB and Ricca had responded and ultimately closed discovery, ordering Kearns to respond to their motion.

Kearns filed a response, to which NYCB and Ricca replied, and the district court held a hearing. In its memorandum decision, the district court found that the parties had gone outside the pleadings and, pursuant to K.S.A. 2016 Supp. 60-212(d), treated NYCB

and Ricca's motion as one for summary judgment under K.S.A. 2016 Supp. 60-256. After discussing both general and specific jurisdiction, the district court determined that it lacked personal jurisdiction over NYCB and Ricca. On the forum issue, the district court concluded that New York was a more convenient forum and declined jurisdiction.

Kearns timely appeals.

ANALYSIS

Two preliminary issues need to be addressed. First, Kearns argues that the district court had general and specific jurisdiction over First American, that Kansas was the correct forum for a case involving First American, and that the district court raised affirmative defenses for First American. However, Kearns dismissed First American after settling with it, meaning that any issues involving First American are moot.

Second, Kearns acknowledges that in arguing the district court had personal jurisdiction over NYCB and Ricca, he is relying on several statutes for the first time on appeal. He invokes, however, two of the recognized exceptions to the rule that arguments not presented to the district court cannot be raised for the first time on appeal, claiming that his newly asserted theories involve only questions of law and their consideration "'is necessary to serve the ends of justice or to prevent the denial of fundamental rights.'" See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). Because the question of whether jurisdiction exists is one of law answerable for the first time on appeal, Kearns may raise these new arguments. See *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005).

Kearns first claims the district court erred in finding that it lacked personal jurisdiction over NYCB and Ricca. When a district court grants a motion to dismiss for lack of personal jurisdiction, we review the decision under a de novo standard. *Kluin v. American Suzuki Motor Corp.*, 274 Kan. 888, 893, 56 P.3d 829 (2002). The burden of establishing personal jurisdiction is on the plaintiff. *Merriman v. Crompton Corp.*, 282 Kan. 433, 439, 146 P.3d 162 (2006). When the issue of personal jurisdiction is raised before trial, the plaintiff only needs to make only a prima facie showing, and courts are to resolve factual disputes in the plaintiff's favor. 282 Kan. at 439.

Because both parties went beyond the pleadings in addressing NYCB and Ricca's motion, which also alleged that Kearns had failed to state a claim upon which relief could be granted, K.S.A. 2016 Supp. 60-212(d) required the district court to treat the motion as one for summary judgment, with all parties being "given a reasonable opportunity to present all the material that is pertinent to the motion." A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2016 Supp. 60-256(c)(2). All facts and inferences reasonably drawn from the evidence must be resolved in favor of the party against whom summary judgment is sought. *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P.2d 531 (1999). The party opposing a motion for summary judgment must present evidence showing that a material fact is disputed. 266 Kan. at 871. If reasonable minds can come to different conclusions based on the evidence, summary judgment must be denied. 266 Kan. at 871-72.

When considering whether it has personal jurisdiction over a defendant, a Kansas court generally relies on a two-step analysis. *Merriman*, 282 Kan. at 440. First, the court determines if a basis for jurisdiction exists under Kansas law. 282 Kan. at 440. If so, the

court must then decide "'if the exercise of personal jurisdiction complies with the due process requirements of the Fourteenth Amendment to the United States Constitution.'" 282 Kan. at 440 (quoting *Kluin*, 274 Kan. at 894). There are two types of personal jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). Specific jurisdiction applies when the lawsuit arises from or is related to a defendant's conduct in a state. 466 U.S. at 414. Kansas' long-arm statute, K.S.A. 2016 Supp. 60-308(b), states when Kansas courts may exercise specific jurisdiction. General jurisdiction concerns a state's authority to exercise jurisdiction over a certain defendant, no matter where the lawsuit arose. *Helicopteros*, 466 U.S. at 415; see *Kluin*, 274 Kan. at 895.

A.      *General jurisdiction over NYCB*

Kearns asserts two bases for why the district court had general jurisdiction over NYCB. First, under K.S.A. 2016 Supp. 17-7307(c) and K.S.A. 2016 Supp. 60-308(b)(2), NYCB conducted "substantial ongoing business" in Kansas. Second, jurisdiction was conferred through NYCB's wholly owned subsidiary, NYCB Mortgage Company, LLC (NYCB Mortgage), by way of both implied consent under K.S.A. 2016 Supp. 17-7931 and NYCB Mortgage's substantial ongoing business in Kansas.

1.      *Substantial ongoing business in Kansas*

K.S.A. 2016 Supp. 17-7307(c) provides in part that a person may sue a foreign corporation "whether or not such corporation is qualified to do business in this state, which cause of action arose in Kansas out of such corporation doing business in Kansas, or arose while such corporation was doing business in Kansas." Kansas courts can exercise general jurisdiction under K.S.A. 17-7307(c) as long as the foreign corporation has "'continuous and systematic general business contacts.'" *Merriman*, 282 Kan. at 456 (quoting *Helicopteros*, 466 U.S. at 416). Those contacts must be "so 'continuous and

8

systematic' as to render [the corporation] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S. Ct. 154, 90 L. Ed. 95 [1945]). A foreign corporation is generally at home where it is incorporated and where its principal place of business is located. *Daimler AG v. Bauman*, 571 U.S. ___, 134 S. Ct. 746, 749, 187 L. Ed. 2d 624 (2014). General jurisdiction can be, in the "exceptional case," available in other forums but only when the corporation's affiliations with the forum are "so substantial and of such a nature as to render the corporation at home." 134 S. Ct. at 761 n.19.

Kearns does not apply that standard. Instead, he argues that NYCB has conducted "substantial ongoing business" in Kansas because NYCB obtained loans secured by Kansas real estate; NYCB representatives had discussions with him; NYCB litigated cases in Kansas; NYCB's customer service department told him that NYCB does business in Kansas; and the vice president of NYCB did not deny in an affidavit that NYCB does "business in Kansas for litigation purposes, bank accounts, certificates of deposit and investments."

Even assuming Kearns' allegations are true, he fails to show that NYCB's affiliations with Kansas are "so 'continuous and systematic' as to render [it] essentially at home." See *Goodyear*, 564 U.S. at 919 (quoting *International Shoe*, 326 U.S. at 317). First, Kearns does not provide any authority suggesting that NYCB's alleged contacts are substantial enough to render it at home in Kansas. Second, if jurisdiction is found to exist merely because NYCB had discussions with Kearns and litigated cases in Kansas, NYCB would be subject to general jurisdiction in every state in which it has discussions with someone or litigates cases. See *Daimler*, 134 S. Ct. at 761. Third, the burden to establish jurisdiction is on Kearns, not NYCB. See *Merriman*, 282 Kan. at 439. Kearns cannot fault NYCB's vice president for failing to deny in an affidavit allegations that Kearns did not include in his petition and has not established.

9

The only allegation worth our attention is NYCB's admission that it obtained loans secured by Kansas real estate. But once again, if Kearns' argument is accepted, NYCB would be subject to general jurisdiction anywhere the real estate securing one of its loans is located. At least one federal court has found that a party's ownership of loans secured by property in the forum state does not support general jurisdiction. *Best Western International, Inc. v. Coastline RE Holdings Corp.*, No. 2:10-cv-02290 JWS, 2011 WL 285846, at *2 (D. Ariz. 2011) (unpublished opinion). In short, owning loans secured by Kansas real estate does not render NYCB at home in Kansas.

Kearns also claims that NYCB admitted to doing business in Kansas. Whether Kearns is referring to NYCB obtaining loans secured by Kansas real estate or its admission that it has recently begun soliciting mortgage lending in Kansas is unclear. If he is referring to the latter, Kearns has again failed to show that such conduct renders NYCB at home in Kansas. NYCB began soliciting mortgage lending in Kansas only 4 months after Kearns filed the lawsuit. The law in Kansas has long been that the existence of jurisdiction must be based on facts existing "at or before the time such jurisdiction was assumed or exercised." *Carney v. Taylor*, 4 Kan. 178, 182 (1867).

Moreover, Kearns' reliance on K.S.A. 2016 Supp. 60-308(b) in arguing that the district court had general jurisdiction over NYCB based on its substantial ongoing business is also misplaced because the statute's use is limited to specific jurisdiction. See *Kluin*, 274 Kan. at 896. Kearns fails to provide any authority showing that K.S.A. 2016 Supp. 60-308(b) is relevant in determining the existence of general jurisdiction.

2.    *NYCB Mortgage Company, LLC*

K.S.A. 2016 Supp. 17-7931(g) states in part that to do business in Kansas, a corporation must submit to the secretary of state an application which includes "an

irrevocable written consent of the foreign covered entity that actions may be commenced against it in the proper court of any county where there is proper venue by the service of process on the secretary of state." This statute can provide a basis for Kansas courts to exercise general jurisdiction over foreign corporations. *Merriman*, 282 Kan. at 443-45, 450 (discussing K.S.A. 17-7301, now codified as K.S.A. 2016 Supp. 17-7931). When a corporation applies to do business in Kansas, it consents to personal jurisdiction. 282 Kan. at 445. Consenting to jurisdiction in Kansas by applying to do business in the state does not violate the requirements of due process. 282 Kan. at 455.

Here, Kearns argues that NYCB consented to general jurisdiction in Kansas when its wholly owned subsidiary, NYCB Mortgage, registered with the Kansas Secretary of State. But even assuming that NYCB Mortgage did in fact apply to do business in Kansas under K.S.A. 2014 Supp. 17-7931(g), Kearns cannot use NYCB Mortgage's consent to personal jurisdiction to confer jurisdiction over NYCB because NYCB Mortgage is not a party to the lawsuit. In *Merriman*, the plaintiff sought general jurisdiction over a corporation based on an affiliated corporation being registered in Kansas, arguing service on the affiliated corporation would provide jurisdiction over the parent corporation under the alter ego theory. But the court found that the plaintiff's argument was flawed because the affiliated company was not a party to the lawsuit. 282 Kan. at 455-56. Kearns, likewise, cannot use NYCB Mortgage's registration to do business in Kansas to create jurisdiction over NYCB because NYCB Mortgage is a nonparty.

Kearns also argues that under K.S.A. 2016 Supp. 17-7307(c), Kansas courts have general jurisdiction over NYCB because of NYCB Mortgage's substantial ongoing business in Kansas. In support of his argument, Kearns appears to allege only two facts: (1) NYCB Mortgage is registered to do business in Kansas; and (2) NYCB Mortgage has serviced loans secured by Kansas real estate since 2010. But at least one federal court has determined that being licensed to do business in a state does not make a corporation at home in that state. See *Henderson v. United Student Aid Funds, Inc.*, No. 13-CV-1845

11

JLS (BLM), 2015 WL 12658485, at *3 (S.D. Cal. 2015) (unpublished opinion). And as with NYCB's ownership, NYCB Mortgage's servicing of loans secured by Kansas real estate is not a sufficient affiliation with Kansas because it would be subject to general jurisdiction anywhere the real estate securing one of its loans is located.

As an aside, we note that Kearns does not argue on appeal that the district court had general jurisdiction over Ricca. Because the issue was not briefed, we consider it waived and abandoned. See *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

B.    *Specific jurisdiction over NYCB and Ricca*

Kearns also claims that the district court had specific jurisdiction under K.S.A. 2016 Supp. 60-308(b), Kansas' long-arm statute. He argues that NYCB and Ricca (1) transacted business in Kansas; (2) committed a tortious act in Kansas; (3) caused injury to a person or property in Kansas through an act or omission outside of Kansas while engaged in the solicitation or service activities in Kansas; and (4) entered into an express or implied arrangement with a corporation or partnership residing or doing business in Kansas. See K.S.A. 2016 Supp. 60-308(b)(1)(A), (B), (G)(i), and (K).

1.    *Long-arm statute*

Kansas courts use, as mentioned, a two-step test to determine whether they have personal jurisdiction over a defendant. *Merriman*, 282 Kan. at 440. When the issue is whether a court has specific jurisdiction, the first step is determining whether the Kansas long-arm statute, K.S.A. 2016 Supp. 60-308(b), provides a statutory basis for specific jurisdiction. See 282 Kan. at 459-64. If so, the next step is to consider whether applying Kansas' long-arm statute comports with the due process requirements. See 282 Kan. at 464-74. In determining whether jurisdiction exists, "K.S.A. 60-308(b) is to be liberally

12

construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the United States Constitution." *Kluin*, 274 Kan. at 894.

NYCB and Ricca do not strenuously contest Kearns' claim that Kansas' long-arm statute applies, only arguing that a basis for specific jurisdiction does not exist because Kearns failed to allege sufficient facts in the petition. While Kearns did not use the phrases "transacted business" or "tortious act" or cite K.S.A. 2016 Supp. 60-308(b), the arguments he makes in his petition are substantively the same. As discussed, Kearns' reliance on K.S.A. 2016 Supp. 60-308(b) for the first time on appeal is permissible. Because NYCB and Ricca do not argue why the provisions of K.S.A. 2016 Supp. 60-308(b) do not apply, no further analysis is required. It seems that NYCB and Ricca would rather we focus on whether exercising specific jurisdiction over NYCB and Ricca violates due process.

2.      *Purposeful availment*

To comport with the requirements of the Due Process Clause, courts can exercise jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts" with the state. *International Shoe*, 326 U.S. at 316; see *Merriman*, 282 Kan. at 464-65 (discussing *International Shoe*). In Kansas, due process mandates "a demonstration that the nonresident defendant purposely established minimum contacts with the forum state, thereby invoking the benefits and protections of its laws." *In re Hesston Corp.*, 254 Kan. 941, Syl. ¶ 3, 870 P.2d 17 (1994). "The requirement of purposeful availment ensures that an out-of-state defendant will not be haled into a jurisdiction as a result of the unilateral acts of another party." *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach*, 33 Kan. App. 2d 593, 600, 106 P.3d 74, *rev. denied* 280 Kan. 983 (2005).

13

More recently, the United State Supreme Court determined that in order "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. ___, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014). When determining whether a court has specific jurisdiction, the inquiry "'focuses on "the relationship among the defendant, the forum, and the litigation."' [Citations omitted.]" 134 S. Ct. at 1123. That relationship must be the result of contacts that defendant created with the state. 134 S. Ct. at 1122. Courts also should consider a defendant's contacts with the state, not the defendant's contacts with people residing there, and the defendant's only link to the state cannot be the plaintiff. 134 S. Ct. at 1122.

Kearns first argues that NYCB and Ricca had multiple contacts with him at his law office in Kansas. The contacts were made through phone calls, faxes, emails, and letters. But these contacts are insufficient to confer specific jurisdiction over NYCB and Ricca. First, the alleged contacts were not with Kansas but with a person—who is not even a resident of the state. Second, jurisdiction cannot exist based merely based upon NYCB and Ricca's contacts with Kearns, the plaintiff. See 134 S. Ct. at 1122. Third, "'[i]t is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts.'" *Olsen v. Mapes*, 139 Fed. Appx. 54, 57 (10th Cir. 2005) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 [10th Cir. 1995]).

Kearns also argues that NYCB and Ricca had minimum contacts with Kansas because they hired a Kansas process server to serve Kearns and hired a law firm to litigate the case in Kansas. In *Midwest Manufacturing, Inc. v. Ausland*, 47 Kan. App. 2d 221, 273 P.3d 804 (2012), the plaintiff sued the defendants in Kansas for malicious prosecution in a previous case in California. This court held that obtaining service over the plaintiff in the previous lawsuit was not a sufficient enough contact with Kansas to create specific jurisdiction. 47 Kan. App. 2d at 230. As a result, NYCB and Ricca's hiring of a Kansas process server did not create any meaningful contact with Kansas. Similarly,

14

following this court's rationale in *Ausland*, hiring a law firm in previous cases does not create meaningful contacts with a state. Also, Kearns has failed to show how this suit is related to NYCB and Ricca's hiring of a law firm to litigate other cases in Kansas. See *Walden*, 134 S. Ct. at 1121 (inquiry "'focuses on "the relationship among the defendant, the forum, and the litigation"'").

Kearns next argues that both NYCB and Ricca have conducted business in Kansas, filed lawsuits in Kansas, and have established contacts with Kansas through an interactive website. But besides mentioning that NYCB and Ricca's ongoing banking contacts with Kansas are commensurate with the banking business contact they had with him, Kearns does not explain how NYCB and Ricca's banking business contacts, previous Kansas lawsuits, and use of an interactive website are related to this lawsuit. As mentioned, specific jurisdiction refers to the jurisdiction created when the lawsuit arises from or is related to a defendant's conduct in a state. *Helicopteros*, 466 U.S. at 414. Because Kearns has failed to make such a connection, NYCB and Ricca's business contacts, previous lawsuits, and website are not meaningful contacts with Kansas.

Kearns finally argues that the funds in the escrow agreement are related to Kansas. He suggests that initially NYCB and Ricca's allegedly improper action was directed at him and Sheldon, but when the fraudulent charges were added years later the funds in the escrow agreement were the target, and the focus of the action and any following actions became Kansas. Kearns admits, however, that the escrow funds were held in Utah. So even if the target of NYCB and Ricca's allegedly tortious conduct became the escrow funds, the escrow funds had no connection to Kansas.

3.      Calder *effects test*

In *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), the United States Supreme Court determined whether a California court could exercise

15

personal jurisdiction over two Florida defendants who worked for a tabloid magazine and had written and edited an allegedly libelous article about the plaintiff, a California entertainer. After considering the defendants' various contacts with the state, the Court held that California was the "focal point both of the story and of the harm suffered" and jurisdiction was "proper in California based on the 'effects' of their Florida conduct in California." 465 U.S. at 789.

Here, Kearns argues that the district court had specific jurisdiction over NYCB and Ricca because their alleged conduct's injurious effects were felt by a Kansas business and a Kansas resident (Sheldon). He also reiterates the different ways in which NYCB and Ricca have had contacts with Kansas. But *Calder* does not "replace the need to demonstrate minimum contacts that constitute purposeful availment, that is conduct by the nonresident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward a state resident." *Aeroflex Wichita, Inc. v. Filardo*, 294 Kan. 258, 282, 275 P.3d 869 (2012); see also *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1078 (10th Cir. 1995) ("[C]ourts finding personal jurisdiction based upon an intentional tort analysis have not created a per se rule that an allegation of an intentional tort creates personal jurisdiction. Instead, they have emphasized that the defendant had additional contacts with the forum."). NYCB and Ricca's contacts with Kansas, as previously mentioned, were insufficient to constitute purposeful availment.

### 4.    *Civil conspiracy*

"[I]f one conspirator commits acts in Kansas in furtherance of the conspiracy and that conspirator falls under [Kansas' long-arm statute], jurisdiction can be obtained as to all conspirators." *Merriman*, 282 Kan. at 464. The elements of a civil conspiracy claim are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Citizens State Bank v. Gilmore*, 226 Kan. 662,

16

671, 603 P.2d 605 (1979). For personal jurisdiction to exist on the basis of civil conspiracy, the plaintiff cannot merely claim that a conspiracy existed but must allege enough facts to make a prima facie showing. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (2007).

Here, Kearns claims a conspiracy existed between NYCB, Ricca, and First American. The exact details of the alleged conspiracy are unclear, but it seems Kearns believes that NYCB, Ricca, and First American conspired to add fraudulent charges to a judgment action that occurred in New York, which charges First American paid with escrow funds held in Utah. But Kearns has failed to show that a civil conspiracy actually existed. First, Kearns has not alleged any facts that a conspiracy existed or that there was a meeting of the minds, and the allegations in the petition are conclusory and do little to support a conspiracy claim. Second, Kearns has not shown that NYCB, Ricca, or First American committed any acts in Kansas to further the conspiracy.

NYCB and Ricca argue that assuming the district court could have exercised jurisdiction over First American, Kearns cannot use First American to create jurisdiction over them because he dismissed First American and it is no longer a party to the lawsuit. But Kearns seems to be arguing that if jurisdiction is found to exist over one of the defendants, then jurisdiction exists over all three because they were conspirators. Although the district court determined that Kearns could not use First American to create jurisdiction over NYCB and Ricca because First American was no longer a party, it did not support its conclusion with any authority. On appeal, NYCB and Ricca merely quote the district court. Nevertheless, this issue is immaterial because of Kearns' failure to allege facts necessary to support a civil conspiracy claim.

Because the district court had neither general jurisdiction over NYCB nor specific jurisdiction over NYCB or Ricca, the district court did not err in dismissing the case for lack of personal jurisdiction.

17

## DID THE DISTRICT COURT ERR IN DISMISSING THE CASE BASED ON THE DOCTRINE OF FORUM NON CONVENIENS?

Kearns also claims that the district court erred in finding that Kansas was an inconvenient forum. We will overturn a district court's forum non conveniens finding only for an abuse of discretion. *State v. Johnson*, 261 Kan. 496, 501, 932 P.2d 380 (1997). "A district court abuses its discretion when: (1) no reasonable person would take the view adopted by the trial judge; (2) the ruling is based on an error of law; or (3) substantial competent evidence does not support [the] finding[s] of fact." *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Forum non conveniens is the "'power of the court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum.' Black's Law Dictionary 655 (6th ed. 1990)." *Johnson*, 261 Kan. at 501. District courts have the authority to dismiss a case under forum non conveniens when the facts and circumstances of the case call for it to do so. *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 781, 740 P.2d 1089 (1987). The factors a court may consider include the

> "'ease of access to the sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses. Other factors include the possibility of viewing the premises, . . . enforceability of a [foreign] judgment . . . ; relative advantages and obstacles to a fair trial; and [other factors] that make a trial . . . easy, expeditious, and inexpensive.' [Citation omitted.]" *Environmental Ventures, Inc. v. Alda Services Corp.*, 19 Kan. App. 2d 292, 299, 868 P.2d 540 (1994).

As the district court concluded, this lawsuit's connection with Kansas is weak. Kearns' law office, where NYCB and Ricca communicated with him, is in Kansas. Sheldon, a nonparty potential witness, is a resident of Kansas. But Kearns is a resident of Missouri. NYCB's principal place of business is in New York. Ricca is a resident of New

18

York and is licensed to practice law in New York. The property involved in the real estate transaction is located in New York. The sheriff's sale occurred in New York. The foreclosure proceedings took place in New York. The action in which NYCB and Ricca allegedly added fraudulent charges and provided false information was filed in New York, and the escrow funds were held in Utah. The documents needed to prove some of Kearns' claims are now in Arizona or Florida, and most of the potential witnesses are located in California or New York. Based on such facts, because a reasonable person could have reached the conclusion that Kansas was an inconvenient forum, the district court did not abuse its discretion.

Kearns also argues that the district court erred in deciding that Kansas was not a convenient forum when it had already concluded that it lacked personal jurisdiction over NYCB and Ricca. Even if Kearns' argument has merit, the district court's error would not be reversible because it found that it lacked personal jurisdiction, a separate and independent ground for dismissing the case. The district court did not err in dismissing the case based on the doctrine of forum non conveniens.

### DID THE DISTRICT COURT ALLOW FOR SUFFICIENT DISCOVERY?

Finally, Kearns claims that the district court erred in failing to enforce substantive discovery. District courts, in their discretion, control discovery, and a discovery order will not be overturned on appeal unless the district court abused its discretion. *Hill v. Farm Bur. Mut. Ins. Co.*, 263 Kan. 703, 704, 952 P.2d 1286 (1998). As before, judicial discretion is abused when (1) no reasonable person would take the view adopted by the trial court; (2) the ruling is based on an error of law; or (3) the ruling is based on an unsupported factual finding. *Wiles*, 302 Kan. at 74.

The record shows that the district court held at least four discovery conferences. During discovery, which was limited to the jurisdiction and forum issues only, the district

court gave Kearns several opportunities to seek admissions and documents from NYCB and Ricca. The district court also instructed NYCB and Ricca to respond to a specified number of requests for admissions and production of documents and warned Kearns that some of his requests appeared to go beyond the jurisdiction and forum issues. Counsel for NYCB and Ricca stated that they responded to Kearns' requests honestly and could not produce documents that did not exist. The district court agreed with NYCB and Ricca, finding that it appeared that they had responded as directed. When NYCB and Ricca complained that some of Kearns' requests were vague and confusing, the district court gave him another opportunity to resubmit the requests.

Finally, though, the district court had enough and on June 29, 2015, told Kearns:

"Most of what I keep hearing is something very equivalent to Judge, we handed them a request for admissions that they had done us wrong, and they won't answer it. It's like they've taken a position that they haven't got anything to submit to jurisdiction. If you think you've got it, you had ample time to discover it. You had ample time to investigate all around getting it directly from them. You've had plenty of time to do this. I have to agree with what [defendants' counsel] characterized. It seems like it's a moving target that keeps getting redefined. It's like you're looking for some different version of what you think is out there or something. Seems like to me we've had sufficient opportunity to discover and investigate regarding the jurisdiction of forum non-conveniens issues . . . . It's time to get a response on the motion to dismiss."

A reasonable person could have also decided that Kearns had been given enough time to discover the necessary evidence. The district court allowed for sufficient discovery.

Affirmed.

20